UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

| | |
|---|---|
| ANGELEAN LOVING and<br>DENETTE JOHNSON,<br><br>Plaintiffs,<br><br>v.<br><br>BRAINERD HOUSING AND<br>REDEVELOPMENT AUTHORITY and<br>DOUG GROUT, in his official capacity as<br>Executive Director,<br><br>Defendants. | Civil No. 08-1349 (JRT/RLE)<br><br><br><br>**MEMORANDUM OPINION AND<br>ORDER GRANTING IN PART AND<br>DENYING IN PART MOTION TO<br>DISMISS** |

Laurence P. Chamberlain, **LEGAL AID SERVICE OF NORTHEASTERN MINNESOTA**, 14091 Baxter Drive, Suite 116, Baxter, MN 56425, for plaintiffs.

Patricia A. Aanes and John H. Erickson, **ERICKSON & AANES LAW OFFICES**, P.O. Box 525, Brainerd, MN 56401, for defendants.

This case arises out of the terminations of the Section 8 housing vouchers of plaintiffs Angelean Loving and Denette Johnson (collectively, "plaintiffs") by defendants Brainerd Housing and Redevelopment Authority and its executive director Doug Grout (collectively, "BHRA"). Plaintiffs bring claims under 42 U.S.C. § 1983, alleging that these terminations violated the Due Process Clause of the United States Constitution and the United States Housing Act.[1] *See* 42 U.S.C. § 1437f. BHRA now moves to dismiss

---

[1] Loving and Johnson initially filed separate actions, with nearly identical complaints. After BHRA filed nearly identical motions to dismiss these complaints, this Court held a joint

(Footnote continued on next page).

this action under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons given below, BHRA's motion is granted in part and denied in part.

## BACKGROUND

Loving and Johnson are residents of Crow Wing County, Minnesota, and each received federal housing assistance through BHRA. (Am. Compl. ¶3.) Loving received a monthly voucher for approximately $546 and Johnson received a monthly voucher for approximately $591. (*Id*. ¶¶17, 50.) BHRA terminated this assistance to both plaintiffs in June 2007. (*Id*. ¶¶41, 74.)

The path toward the termination of these benefits began in May 2007. On May 15, 2007, a state court judge signed a search warrant authorizing a search of Loving's residence. (*Id*. ¶20.) Although the affidavit supporting that warrant application is not in the record, plaintiffs indicate that it accused Larry Curtis Tate – a boyfriend of one of Loving's friends – of engaging in criminal activities related to drugs. (*Id*. ¶21.) The affidavit also alleged that Loving had participated in drug sales. (*Id*.) Loving alleges that she has not engaged in criminal activities involving drugs or violence while participating in the Section 8 voucher program, and that she was unaware of any criminal activities involving Tate until her home was searched. (*Id*. ¶22.)

---

(Footnote continued).

hearing on these motions, and then ordered that the two cases be consolidated. (Docket No. 18.) Following that Order, the plaintiffs filed an Amended Complaint. (Docket No. 19.) This means that the complaints that BHRA has sought to dismiss have technically been superseded. Plaintiffs' Amended Complaint, however, substantially repeats the allegations in Loving and Johnson's initial complaints. Thus, rather than requiring BHRA to re-file its motion to dismiss, this Court construes its earlier motions as a motion to dismiss the Amended Complaint.

Also on May 15, 2007, a state court judge signed a search warrant authorizing a search of Johnson's residence. (*Id*. ¶55.) The warrant affidavit, which is absent from the record, allegedly stated that the suspect was Lawrence Johnson – an abusive husband Johnson had kicked out and sought to divorce – and that Mr. Johnson was suspected of criminal drug activities. (*Id*. ¶¶52-53.) Denette Johnson is not mentioned in the warrant, other than an allegation that she was overheard giving her address to an incarcerated person. (*Id*. ¶56.) Johnson alleges that she was not involved in any criminal activities involving drugs or violence, and that she was unaware of any activities involving her husband until the warrant was executed. (*Id*. ¶57.)

In letters dated June 5, 2007, BHRA informed Loving and Johnson that it would be terminating their housing assistance effective June 30, 2007. (*Id*. ¶¶23, 58.) In both cases, the letters stated, "The [r]eason for this action is that you have . . . [e]ngaged in drug related or violent criminal activity."[2] (*Id*. (alterations and omissions in plaintiffs' complaint).) Plaintiffs allege that the notice did not provide further details about the basis for BHRA's actions, or indicate who had engaged in the alleged criminal activities. (*Id*.)

Both plaintiffs sent letters to BHRA requesting a hearing to contest BHRA's decision and any documentation of the legal or factual basis for that decision. (*Id*. ¶¶24-25, 59-60.) BHRA provided Loving with the search warrant and supporting affidavit from the search of her home, an evidence receipt for items allegedly discovered during

---

[2] These letters are not included in the record. Accordingly, this quotation is taken from plaintiffs' complaint.

the search,[3] and portions of a Department of Housing and Urban Development ("HUD") handbook explaining the circumstances in which it was permitted to terminate assistance. (*Id*. ¶26.)  Similarly, BHRA provided Johnson with the search warrant application and supporting affidavit from the search of her home, and relevant portions of a HUD handbook. (*Id*. ¶61.)

Hearings for both plaintiffs took place on June 21, 2007. (*Id*. ¶¶29, 63.)  In both cases, the only witness who testified on behalf of BHRA was a BHRA assistant director, who did not have any personal knowledge of the disputed criminal activities. (*Id*. ¶30.) Over the plaintiffs' objections, BHRA also submitted the documents that had been provided to Loving and Johnson in advance of their hearings. (*Id*. ¶¶31, 65.)  In Johnson's case, BHRA also submitted an evidence receipt purporting to describe items recovered during the search of her home, which was not provided to her in advance of the hearing. (*Id*. ¶65.)  The individuals who originally produced the warrants, affidavits, and evidence receipts were not present at plaintiffs' hearings, and the hearing did not afford the plaintiffs a right to subpoena those individuals. (*Id*. ¶¶32-33, 66, 68.)

Several witnesses testified on Loving's behalf, including her landlord, the director of Crow Wing County Human Services, and several family members. (*Id*. ¶¶34, 38.) Those witnesses, as well as Loving, testified that Loving was not involved in any criminal activities. (*Id*. ¶¶35-39.)  Johnson called her mother and brother to testify on her

---

[3] The evidence receipt allegedly listed a "pipe found in cigarette pack," a "Riteweight digital scale," and a "GNC blue-green bottle of inositol powder." (*Id*. ¶27.)  Loving alleges that she received no explanation of how the possession of any of these items was unlawful. (*Id*.)

behalf. (*Id*. ¶69.) Those witnesses and Johnson testified that Johnson was not involved in any criminal activities, and that Lawrence Johnson was no longer living in her home. (*Id*. ¶¶70-72.)

The hearing officer issued written findings and conclusions in both cases on June 25, 2007, and upheld BHRA's decision to terminate assistance to both plaintiffs. (*Id*. ¶¶41, 74.) In Loving's case, the officer's findings – which are not included in the record – allegedly included the following: (1) "Ms. Loving drove Larry Tate during numerous drug transactions;" (2) "Ms. Loving's residence repeatedly identified as house in which drug transactions occur;" (3) "Drug paraphernalia was found in Ms. Loving's house;" and (4) "Ms. Loving provided crack/cocaine to a 'Cooperative Individual' at her residence." (*Id*. ¶43 (alterations in Loving's complaint).) The officer concluded that these findings were sufficient to terminate Loving's assistance payments. (*Id*. ¶44.)

In Johnson's case, the officer's findings – which are also absent from the record – allegedly included: (1) "Ms. Johnson's residence repeatedly identified as house in which drug transactions occurred;" and (2) "Drug paraphernalia was found in Ms. Johnson's house." (*Id*. ¶76.) The officer indicated that these findings were sufficient to terminate Johnson's housing assistance. (*Id*. ¶77.)

In both cases, the hearing officer's findings also indicated that the officer had engaged in phone conversations with unnamed HUD officials the day after the hearing. (*Id*. ¶¶42, 75.) Neither plaintiffs nor their attorney were involved in those conversations or informed of them in advance. (*Id*.) On April 30, 2008, plaintiffs wrote letters to

Grout, arguing that the hearing officer's conclusions were contrary to federal law, and asking Grout to reverse them. (*Id*. ¶¶46, 79.) Grout has not done so. (*Id*. ¶¶47, 80.)

On May 16, 2008, plaintiffs brought this action seeking relief in federal district court. In Count I, plaintiffs argue that they were deprived of a protected property interest in violation of the Due Process Clause of the United States Constitution. Specifically, plaintiffs argue that (1) the notice of termination sent by BHRA was inadequate; (2) the hearing officer inappropriately relied on unauthenticated hearsay evidence; (3) the hearing officer relied on legal rules and evidence that were not adduced at the hearing; and (4) to the extent that the evidence submitted by BHRA was not appropriate to consider, the hearing officer made factual determinations contrary to the preponderance of the evidence. In Count II, plaintiffs argue that the defendants violated the United States Housing Act, *see* 42 U.S.C. § 1437f, and federal regulations implementing that Act. Specifically, plaintiffs argue that the hearing officer relied on evidence not offered by BHRA at the hearing, and that his decision was not supported by the preponderance of the evidence. Johnson also argues that BHRA violated this Act when it relied on an evidence receipt not provided to her in advance of her hearing. BHRA now moves to dismiss this action.

## ANALYSIS

### I. STANDARD OF REVIEW

In reviewing a complaint under a Rule 12(b)(6) motion to dismiss, the Court considers all facts alleged in the complaint as true, and construes the pleadings in a light most favorable to plaintiff, the non-moving party. *See, e.g.*, *Bhd. of Maint. of Way*

*Employees v. Burlington N. Santa Fe R.R.*, 270 F.3d 637, 638 (8th Cir. 2001).  A plaintiff, however, must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007).  In short, a plaintiff must state "a claim to relief that is plausible on its face."  *Id*. at 1974.

## II.    SECTION 8

The Section 8 low-income housing program – named for Section 8 of the United States Housing Act of 1937 – is a federal program administered by HUD.  *See generally* 42 U.S.C. § 1437f.  Through this program, the federal government pays rental subsidies to eligible low-income families.  The actual distribution of these funds is typically carried out by state or local public housing agencies ("PHAs").  42 U.S.C. § 1437f(b)(1).

Under regulations promulgated by HUD, PHAs have the authority to terminate a family's assistance if the family violates a "family obligation."  24 C.F.R. § 982.552(c)(1)(i).  The types of violations that may trigger such a termination include criminal activities involving drugs or violence.  *See* § 982.551(l).  If a PHA elects to terminate assistance on these grounds, it must provide the family with a "prompt written notice" that (1) contains "a brief statement of reasons for the decision;" (2) states the family's right to request an informal hearing on the decision; and (3) states the deadline for the family to request such a hearing.  § 982.555(c)(2).  HUD regulations require that families be given an opportunity to appear at such a hearing before their assistance is terminated.  § 982.555(a)(1)(v), (a)(2).

The hearing officer must give both the PHA and the family an opportunity to present evidence and question witnesses, but is not bound to the rules of evidence applicable to judicial proceedings. § 982.555(e)(5). HUD regulations require, however, that any relevant documents be provided to the family in advance of the hearing. § 982.555(e)(2)(i). Following the hearing, the officer must issue a written explanation of the decision. § 982.555(e)(6). The officer's factual determinations must be based "on a preponderance of the evidence presented at the hearing." *Id*. Finally, the PHA is not bound by hearing decisions that are "[c]ontrary to HUD regulations or requirements, or otherwise contrary to federal, State, or local law." § 982.555(f)(2).

## III. COLLATERAL ESTOPPEL

BHRA first argues that plaintiffs' claims are barred by collateral estoppel, because their eligibility for assistance was previously litigated before the hearing officer. Plaintiffs disagree, contending that they are not seeking to re-litigate the fact-finding of the hearing officer and that the right to challenge a PHA determination on procedural grounds is well-settled.

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *see also Univ. of Tenn. v. Elliot*, 478 U.S. 788, 799 (1986) ("[W]hen a state agency acting in a judicial capacity resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, federal courts must give the agency's

factfinding the same preclusive effect to which it would be entitled in the State's courts.") (alterations, citations, and internal quotation marks omitted). As plaintiffs note, however, Minnesota law allows tenants to challenge a PHA's termination of their Section 8 housing assistance on various procedural grounds. *Carter v. Olmstead County Hous. & Redevelopment Auth.*, 574 N.W.2d 725, 729 (Minn. Ct. App. 1998) (reviewing a PHA termination decision under Minnesota state administrative law to determine if it is "unconstitutional, outside the agency's jurisdiction, procedurally defective, based on an erroneous legal theory, unsupported by substantial evidence, or arbitrary and capricious"). In other words, under Minnesota law, a PHA decision is not insulated from the type of judicial review sought here.

In addition, the Eighth Circuit and numerous federal courts elsewhere have recognized analogous actions under § 1983, involving claims nearly identical to those raised here by plaintiffs. *See, e.g.*, *Hunter v. Underwood*, 362 F.3d 468, 477-79 (8th Cir. 2004) (considering claims that PHA hearing procedures failed to satisfy the Constitution or HUD regulations); *Clark v. Alexander*, 85 F.3d 146, 150-52 (4th Cir. 1996) (permitting a § 1983 sufficiency-of-the-evidence challenge to a PHA decision); *Gammons v. Mass. Dep't of Hous. & Cmty. Dev.*, 523 F. Supp. 2d. 76, 85 n.8 (D. Mass. 2007) (same). Where the defendant in one of these actions argued that such a claim was barred by collateral estoppel, that argument was swiftly rejected. *See Gammons*, 523 F. Supp. 2d. at 85 n.8. In short, a federal claim that a PHA has violated HUD regulations, or failed to provide constitutionally adequate process, is distinct from an "effort to 'relitigate' the fact-finding in the earlier administrative case." *Id*. The right to bring such process-based

challenges under § 1983 is well-established, and those claims are not barred by collateral estoppel.

## IV. FAILURE TO STATE A CLAIM

BHRA also argues that plaintiffs have failed to state an actionable claim. The various grounds for plaintiffs' claims are dealt with separately below.

### A. Constitutional Due Process (Claim I)

#### 1. Notice

In *Goldberg v. Kelly,* the Supreme Court held that welfare recipients facing a possible termination of benefits are entitled to "timely and adequate notice detailing the reasons for a proposed termination." 397 U.S. 254, 267-68 (1970). This requirement applies to proposed terminations of Section 8 housing assistance. *Edgecomb v. Housing Auth. of Vernon*, 824 F. Supp. 312, 314 (D. Conn. 1993). "The requirement of notice is to inform the tenant of the allegations so that he can prepare a defense." *Id*. at 314. Thus, this notice "must be sufficiently specific for it to enable an applicant to prepare rebuttal evidence to introduce at his hearing appearance." *Billington v. Underwood*, 613 F.2d 91, 94 (5th Cir. 1980). A "proper" notice that satisfies this standard "would state the particular [crime] and the person who allegedly committed it, and would give a brief factual statement concerning the incident." *Edgecomb*, 824 F. Supp. at 315. "A notice which merely parrots the broad language of the regulations is insufficient." *Id.* (internal quotation marks and alterations omitted).

Here, BHRA's notice merely stated, "The [r]eason for this action is that you have . . . engaged in drug related or violent criminal activity." (Am. Compl. ¶¶23, 58) (alterations in complaint). Plaintiffs allege that this notice supplied no additional details, and failed to even indicate which of the general categories cited in the notice – violence and drugs – was the basis for BHRA's decisions. A nearly identical notice was addressed in *Edgecomb*.[4] There, as here, "[t]he notice sent to the plaintiffs [did] not indicate which family member committed proscribed acts, what the nature of the alleged crime was, or when the relevant acts were committed." 824 F. Supp. at 315. Rather, "[t]he notice merely restated the regulation relied on." *Id*. As in *Edgecomb*, the parroting of that broad language was insufficient to adequately inform the plaintiffs of BHRA's allegations. Without more specific details about the circumstances of plaintiffs' alleged crimes, plaintiffs did not have a constitutionally adequate opportunity to prepare a defense.

BHRA argues that this claim nonetheless fails as a matter of law because they also provided plaintiffs with the evidence that was later introduced at their hearings. BHRA contends that this evidence gave plaintiffs adequate notice of the relevant allegations and cured any deficiencies in their initial letter. The Court is unable to meaningfully evaluate this claim, however, because these supplemental disclosures were not submitted by either party, and are not a part of the record. The Court's only window into those documents is

---

[4] The notice in *Edgecomb* stated that the tenant's assistance would be terminated for "having engaged in drug-related criminal activity or violent criminal activity, including criminal activity by any family member." 824 F. Supp. at 315.

-11-

through the brief, inconclusive descriptions in plaintiffs' complaint. (*See* Am. Compl. ¶¶21, 56.) In those circumstances – at a stage of the proceedings when this Court must give the benefit of all reasonable inferences to the plaintiffs – the Court cannot simply assume that these documents contained sufficient detail to afford constitutionally adequate notice. The more appropriate course is to resolve this issue at a stage of these proceedings when the relevant documents are in the record. Thus, BHRA's motion is denied to the extent that it seeks to dismiss plaintiffs' notice-based due process claim.

### 2. Hearsay Evidence

Plaintiffs' second due process claim is that "[t]he only evidence submitted by Defendants was unauthenticated hearsay evidence that does not satisfy Plaintiff's constitutional right to confront and cross-examine witnesses. Additionally, the hearing officer's decision relied entirely on such unauthenticated evidence." (Am. Compl. ¶84(b).) The "hearsay documents" in question are the search warrants, supporting affidavits, and evidence receipts relied on at plaintiffs' hearings. BHRA argues that this claim must be dismissed because under the flexible requirements established in *Goldberg v. Kelly*, hearsay evidence is generally permissible in administrative hearings. *See, e.g.*, *Beauchamp v. De Abadia*, 779 F.2d 773, 775 (1st Cir. 1985). BHRA adds that the HUD regulations governing the hearing process state that "[e]vidence may be considered without regard to admissibility under the rules of evidence applicable to judicial proceedings." 24 C.F.R. § 982.555(e)(5).

The principles governing this issue were recently addressed at length by the Eleventh Circuit. *Basco v. Machin*, 514 F.3d 1177 (11th Cir. 2008). In a case involving the termination of Section 8 housing benefits, the court explained that "[a]lthough the rules of evidence are not strictly applied in administrative hearings, there are due process limits on the extent to which an adverse administrative determination may be based on hearsay evidence." *Id*. at 1182. "[H]earsay may constitute substantial evidence in administrative proceedings as long as factors that assure the underlying reliability and probative value of the evidence are present." *Id*. at 1182 (internal quotation marks omitted). "The reliability and probative force of such evidence depend on whether (1) the out-of-court declarant was not biased and had no interest in the result of the case; (2) the opposing party could have obtained the information contained in the hearsay before the hearing and could have subpoenaed the declarant; (3) the information was not inconsistent on its face; and (4) the information has been recognized by courts as inherently reliable." *Id*. (internal quotation marks omitted). In addition, at least one other federal court has concluded that "[w]hile administrative pretermination hearings are informal, the opportunity to confront and cross-examine witnesses is essential when the information supplied by those witnesses is the reason for the loss of benefits." *Edgecomb*, 824 F. Supp. at 316; *cf. Williams v. Hous. Auth. of City of Raleigh*, No. 05-219, 2008 WL 2355850, at *4 (E.D.N.C. June 9, 2008) (distinguishing *Basco* where the hearing officer relied on other evidence in addition to the hearsay documents).

This Court agrees that under these principles and the record presently before the Court, plaintiffs have stated a sufficient claim to survive a motion to dismiss. BHRA

"concede[s] that there may be cases where certain hearsay evidence alone is not legally sufficient to support a voucher termination." (Defs.' Reply Memo., Docket No. 14, at 7.) BHRA contends, however, that this is not such a case, because the hearing officer heard additional evidence at the hearing, and his decision "reflects consideration of all facts." (*Id*., at 8.) While this assertion may ultimately prove correct, neither party has submitted the documents necessary for the Court to assess it here. The record does not contain the alleged hearsay documents, a transcript of the hearing, or the hearing officer's written decision. In those circumstances, the Court is not in a position to perform a meaningful review of the hearsay documents under *Basco*, or consider the role that the alleged hearsay materials played in the hearing officer's decision. Accordingly, BHRA's motion is denied to the extent that it seeks to dismiss plaintiffs' challenge to BHRA's use of hearsay evidence.

### 3.  BHRA's Reliance on Rules and Evidence Not Adduced at the Hearing

Both HUD regulations and the Supreme Court require the hearing officer's decision to be based on information presented at the hearing. *See* 24 C.F.R. § 982.555(e)(6) ("Factual determinations relating to the individual circumstances of the family shall be based on a preponderance of the evidence *presented at the hearing*.") (emphasis added); *Goldberg*, 397 U.S. at 271 ("[T]he decisionmaker's conclusion as to a recipient's eligibility must rest solely on the legal rules and evidence *adduced at the hearing*.") (emphasis added). Plaintiffs claim that this principle was violated in two ways. First, they note that in the hearing officer's written decision, he referred to communications after the hearing with unnamed "HUD officials." Plaintiffs contend that

-14-

they had no notice of these conversations and no opportunity to respond to their content. Second, plaintiffs contend that the hearing officer relied on legal rules that were not cited by BHRA at the hearing. BHRA argues that both of these claims should be dismissed because any communications with HUD officials were permissible and harmless, and all of the parties were aware of the relevant rules.

As to the hearing officers' alleged communications with HUD officials following the hearing, the Court concludes that it lacks a basis for dismissing this claim as a matter of law. If the hearing officer terminated plaintiffs' assistance on the basis of information supplied after the hearing, plaintiffs' due process rights may well have been violated. *See* 24 C.F.R. § 982.555(e)(6); *Goldberg*, 397 U.S. at 271. This is clear and uncontroversial, because such a practice would substantially undermine tenants' constitutional right to a hearing. While BHRA argues that the alleged contacts at issue in this case were not prejudicial, this Court is not in a position to evaluate this argument without evidence demonstrating the basis for the hearing officers' decisions and further evidence about the nature of the disputed contacts. As with the issues discussed above, the Court cannot simply assume at this stage of the proceedings that the contacts were constitutionally permissible. Thus, BHRA's motion is denied as to the hearing officer's alleged contact with unnamed HUD officials.

As to BHRA's alleged failure to cite the relevant rule, however, the Court grants BHRA's motion. Plaintiffs acknowledge that their own lawyers cited to the relevant rule at their hearings. (Memo. of Law in Resp. to Defs.' M. to Dismiss, Docket No. 12, at 25.) For plaintiffs to win in those circumstances, they would have to demonstrate that

constitutional due process inflexibly requires the *defendant* to state the applicable rule, regardless of whether the parties jointly understand what rule is at issue, or whether the rule is mentioned by another party.  Such rigidity would be inconsistent with *Goldberg v. Kelly*'s general approval of flexible, informal hearing procedures.  *See* 397 U.S. at 269.  Accordingly, the Court grants BHRA's motion to dismiss plaintiffs' claim concerning BHRA's alleged failure to cite the relevant legal rule.

### 4. Legally Sufficient Evidence

Finally, plaintiffs allege that the hearing officers' decisions were not supported by the preponderance of the evidence.  *See Basco*, 514 F.3d at 1183 (finding that a due process violation where a hearing officer relied on legally insufficient evidence in support of his or her decision).  BHRA argues that such a claim should be dismissed because the evidence discussed above was adequate.  As noted above, however, the record does not include the evidence presented at plaintiffs' hearings.  Without that evidence, this Court is not in a position to evaluate whether the hearing officer's decisions were based on sufficient evidence to satisfy the requirements of due process.  Accordingly, BHRA's motion is denied as to plaintiffs' claim that the hearing officers' decisions were not based on legally sufficient evidence.

### B. 42 U.S.C. § 1437f (Count II)

Plaintiffs also bring a § 1983 claim alleging a violation of 42 U.S.C. § 1437f and the rules implementing that provision.  *See Hunter*, 362 F.3d at 478 (noting that "certain provisions of the [United States] Housing Act provide rights that are enforceable under

§ 1983"). Plaintiffs contend that BHRA violated 24 C.F.R. § 982.555(e)(6) – a rule implementing 42 U.S.C. § 1437f – in two ways: first, by relying on evidence acquired from unnamed HUD officials after the hearing, and second, by making factual determinations contrary to the preponderance of the evidence. Plaintiffs also contend that in Johnson's case, BHRA violated 25 C.F.R. § 982.555(e)(2) by relying on documents that were not provided to her in advance of the hearing. BHRA summarily argues that these claims should be dismissed for the same reasons as plaintiffs' due process claims. However, all of those reasons that are relevant to plaintiffs' statutory claims were rejected above. Accordingly, BHRA's motion is denied as to plaintiffs' § 1983 claim for violations of § 1437f.

**ORDER**

Based on the foregoing, all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that BHRA's Motion to Dismiss [Docket No. 4] is **GRANTED in part** and **DENIED in part** as follows:

1. BHRA'S motion is **GRANTED** as to plaintiffs' claim that the relevant legal rules were not cited by BHRA at their hearings.

2. In all other respects, BHRA's motion is **DENIED**.

DATED: February 5, 2009  
at Minneapolis, Minnesota.

                                                     s/ John R. Tunheim  
                                                    JOHN R. TUNHEIM  
                                                  United States District Judge